IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **NEW YORK MARINE AND GENERAL INSURANCE COMPANY** <br> *Plaintiff,* <br><br> v. <br><br> **THOMAS OILFIELD SERVICES, LLC and IMPERIUM INSURANCE COMPANY** <br> *Defendants.* | § § § § § § § § § § | CIVIL ACTION NO. _____ |

**NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S
<u>ORIGINAL COMPLAINT FOR DAMAGES</u>**

TO THE HONORABLE COURT:

COMES NOW NEW YORK MARINE AND GENERAL INSURANCE COMPANY ("New York Marine"), and make this its Original Complaint for Damages against Defendants THOMAS OILFIELD SERVICES, LLC ("TOS"), and IMPERIUM INSURANCE COMPANY ("Imperium"), and shows the Court as follows:

### I.   INTRODUCTION

1.   This breach of contract action is asserted by New York Marine individually and in its subrogated interests to the rights of its named insured, CalTex Energy Group, LLC ("CalTex"), for TOS and Imperium's failure to defend and indemnify CalTex in pending litigation.

### II.   PARTIES

2.   Plaintiff New York Marine is incorporated in New York and maintains its principal place of business in New Jersey.  Accordingly, New York Marine is a citizen of the States of New York and New Jersey.

3.   Defendant TOS is a Texas-formed limited liability company whose members are natural persons, including Greg Peeler, Mary E. Peeler, Bryan Baird, and Michael Horne, all of

whom reside in Gregg County, Williamson County, or Travis County, Texas. Therefore, TOS is a citizen of the State of Texas.

4. Defendant Imperium is Texas-formed company which maintains its principal place of business in Houston, Texas. Accordingly, Imperium is a citizen of the State of Texas.

### III.  JURISDICTION AND VENUE

5. The amount in controversy in this case exceeds $75,000.

6. This Court has subject matter jurisdiction under 28 U.S.C. §1332.

7. Venue is proper in this Court under 28 U.S.C. §1391(b)(1) because Defendant Imperium maintains its principal place of business, and thus resides in this judicial district and/or 28 U.S.C. §1391(b)(2) as a substantial part of the events giving rise to these claims against Defendants Imperium and TOS occurred in this judicial district.

### IV.  SUMMARY OF CLAIMS

8. This breach of contract action arises from Imperium and TOS' wrongful refusal to defend and indemnify New York Marine's named insured, CalTex Energy Group, LLC ("CalTex") in an underlying lawsuit bearing Cause No. DC-24-01235; *Ian Cook v. Patterson-UTI Drilling Company, LLC, Pioneer Natural Resources Company, and CalTex Energy Group, LLC;* In the 14th Judicial District Court of Dallas County, Texas (the "Underlying Lawsuit").[1]

9. In the Underlying Lawsuit, Ian Cook, an alleged employee of TOS, brought suit against CalTex, among others, for alleged injuries he received while on-site the Patterson-UTI Drilling Company Rig #261 Well Site (the "Well Site"). According to Cook's allegations, he was injured when a forklift operated by an alleged CalTex employee hyperextended the forks of the forklift, causing the right fork to come into contact with Cook's head.

---

[1] *See* Exhibit "A," attached hereto and incorporated herein by reference, that being a true and correct and complete copy of the Underlying Lawsuit's Original Petition, the live pleading as of the date of the filing of this Complaint.

10. Based upon the relationship of various master service agreements, CalTex and New York Marine tendered CalTex's defense and indemnification from the Underlying Lawsuit to TOS and Imperium. To date, Imperium and TOS have wholly failed and refused to defend or indemnify CalTex for the Underlying Lawsuit in breach of the subject master service agreements. New York Marine has thus incurred fees and expenses defending its named insured, which should have been properly paid by TOS and/or Imperium and for which New York Marine seeks recovery.

### V. MASTER SERVICE AGREEMENTS, IMPERIUM POLICY AND FACTUAL ALLEGATIONS

11. New York Marine incorporates and realleges the preceding paragraphs 1-10 as though fully set out herein.

*Pioneer/TOS MSA*

12. Pioneer Natural Resources USA, Inc., Pioneer Natural Resources Pumping Services, LLC, Pioneer Natural Resources Well Services, LLC, Pioneer Water Management, LLC, and Premier Silica LLC (collectively, "Pioneer") entered an Amended and Restated Master Service/Sales Agreement with TOS effective April 22, 2016 (the "Pioneer/TOS MSA").[2] The Pioneer/TOS MSA identifies the Pioneer entities as "Company" and TOS as "Contractor." Relevant provisions of the Pioneer/TOS MSA include:

. . .

(12) <u>Maintenance of Insurance.</u> Contractor shall secure and maintain at all times while this Agreement is in force, at Contractor's sole cost and expense, insurance coverages of the nature, and with minimum limits equal to, or in excess of, the requirements set forth on Exhibit "A," attached hereto and incorporated herein. If the insurance policies secured and maintained by Contractor include limits in excess of those minimum limits required by this Agreement, Company Group shall be an additional insured to the full extent of the limits provided by such insurance. Additionally, nothing contained in this Agreement is intended to limit the scope of insurance coverage available to

---

[2] *See* Exhibit "B," attached hereto and incorporated herein by reference, that being a true and correct and complete copy of the Pioneer/TOS MSA.

Company Group as an additional insured. The satisfaction of any deductibles or self-insured retentions attendant to said coverages shall be the sole responsibility of Contractor. If Contractor fails to procure or maintain any insurance for which it is responsible under this Article 12, Company may, but shall not be required to, procure and maintain such insurance, and Contractor shall promptly reimburse Company for the cost of such insurance following the receipt of Company's invoice, or Company, at its option, may deduct the cost of such insurance from any amounts due, or which may become due, to Contractor under any transaction.

All insurance coverage carried by Contractor shall name each member of Company Group as an "additional insured" so that said insurance be made to extend to and protect Company Group to the same extent Contractor is covered relative to transactions governed by this Agreement. Said insurance coverage shall also be primary as to any other existing, valid and collectible insurance otherwise available to Company, and shall be endorsed to waive, to the extent beneficial to Company Group but not otherwise, any and all claims by the underwriters or insurers against Company Group relative to transactions governed by this Agreement.

. . . .

(13)  <u>Indemnities.</u>

The following definitions shall apply throughout this Agreement:

"Claim(s)" shall mean all claims, demands, causes of action, and liability of every kind and character, including all expenses of litigation or claims, court costs, and attorneys' fees.

"Company Group" shall mean the Company, its parent, affiliates and subsidiaries, and their respective contractors and subcontractors (of any tier) (other than the Contractor which is a Party to this Agreement and its subcontractors), and/or all agents, officers, directors, and employees of each of the foregoing.

"Contractor Group" shall mean Contractor, its parent, affiliates, and subsidiaries, and their respective contractors and subcontractors (of any tier), and/or all agents, officers, directors, and employees of each of the foregoing.

(a)  (i)  CONTRACTOR AGREES TO AND SHALL RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS COMPANY GROUP FROM AND AGAINST ANY AND ALL CLAIMS ON ACCOUNT OF BODILY INJURY, DEATH, AND/OR PROPERTY DAMAGE, THAT MAY BE MADE OR ASSERTED BY ANY MEMBER OF CONTRACTOR GROUP, ARISING OUT OF, RESULTING FROM OR IN ANY WAY INCIDENTAL TO, DIRECTLY OR INDIRECTLY THIS AGREEMENT

**(INCLUDING BUT NOT LIMITED TO THOSE ACTUALLY OR ALLEGEDLY CAUSED BY THE FAULT OR STRICT LIABILITY OF THE COMPANY GROUP, THE UNSEAWORTHINESS OR UNAIRWORTHINESS OF ANY VESSEL, CRAFT OR PLATFORM, OR THE SOLE, JOINT OR CONCURRENT NEGLIGENCE OF ONE OR MORE MEMBERS OF THE COMPANY GROUP).** This indemnification obligation shall be supported by all liability insurance maintained by Contractor for the applicable policy period with policy limits equal to the lesser of (1) the total limits of all liability insurance, including but not limited to the insurance required to be procured by Contractor in Exhibit (A), purchased by Contractor for the applicable policy period; or (2) the total limits of all liability insurance purchased by Company for the applicable policy period. If it is judicially determined that the monetary limits of insurance supporting the indemnities voluntarily and mutually assumed under this Paragraph 13(a) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law. The insurance provided in support of these indemnity obligations shall, however, in no way limit Contractor's indemnity obligations hereunder save and except to the extent necessary, if any, to prevent said indemnification obligations from being declared void, unenforceable or otherwise inoperative.

(ii)     COMPANY AGREES TO AND SHALL RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS CONTRACTOR GROUP FROM AND AGAINST ANY AND ALL CLAIMS ON ACCOUNT OF BODILY INJURY, DEATH, AND/OR PROPERTY DAMAGE, THAT MAY BE MADE OR ASSERTED BY ANY MEMBER OF COMPANY GROUP ARISING OUT OF, RESULTING FROM, OR IN ANY WAY INCIDENTAL TO, DIRECTLY OR INDIRECTLY, THIS AGREEMENT **(INCLUDING, BUT NOT LIMITED TO, THOSE ACTUALLY OR ALLEGEDLY CAUSED BY THE FAULT OR STRICT LIABILITY OF CONTRACTOR GROUP, THE UNSEAWORTHINESS OR UNAIRWORTHINESS OF ANY VESSEL, CRAFT OR PLATFORM, OR THE SOLE, JOINT OR CONCURRENT NEGLIGENCE OF ONE OR MORE MEMBERS OF CONTRACTOR GROUP).** This indemnification obligation shall be supported by all liability insurance maintained by Company for the applicable policy period with policy limits equal to the lesser of (1) the total limits of all liability insurance purchased by Company for the applicable policy period; or (2) the total limits of all liability insurance, including, but not limited to, the insurance

required to be procured by Contractor in Exhibit (A), purchased by Contractor for the applicable policy period. If it is judicially determined that the monetary limits of insurance supporting the indemnities voluntarily and mutually assumed under this Paragraph 13(a) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law. The insurance provided in support of these indemnity obligations shall, however, in no way limit Company's indemnity obligations hereunder, save and except to the extent necessary, if any, to prevent said indemnification obligations from being declared void, unenforceable or otherwise inoperative.

(b)  In the event the provisions of Chapter 151 of the Texas Insurance Code are applicable to a particular transaction, the following mutual indemnity provisions in subparagraphs 13(b)(ii) and 13(b)(iii) will govern that transaction.

(i) THE PARTIES DO NOT INTEND THAT ANY TRANSACTIONS SUBJECT TO THIS AGREEMENT BE CONSTRUED AS A "CONSTRUCTION CONTRACT" OR AN AGREEMENT "COLLATERAL TO OR AFFECTING A CONSTRUCTION CONTRACT" WITHIN THE MEANING OF TEXAS INSURANCE CODE SECTION 151.102, ET SEQ. IF A TRANSACTION IS CONSTRUED AS A "CONSTRUCTION CONTRACT" OR AN AGREEMENT "COLLATERAL TO OR AFFECTING A CONSTRUCTION CONTRACT" WITHIN THE MEANING OF TEXAS INSURANCE CODE SECTION 151.102, ET SEQ., BY A COURT OF COMPETENT JURISDICTION, THEN THE INDEMNITIES PROVIDED IN SUBPARAGRAPHS 13(b)(ii) AND 13(b)(iii) OF THIS AGREEMENT SHALL APPLY.

(ii) CONTRACTOR AGREES TO AND SHALL, RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS COMPANY GROUP FROM AND AGAINST ANY AND ALL CLAIMS ON ACCOUNT OF BODILY INJURY OR DEATH, THAT MAY BE MADE OR ASSERTED BY CONTRACTOR'S OR ITS SUBCONTRACTOR'S (OF ANY TIER) EMPLOYEES AND/OR AGENTS, ARISING OUT OF, RESULTING FROM, OR IN ANYWAY INCIDENTAL TO, DIRECTLY OR INDIRECTLY, THIS AGREEMENT **(INCLUDING, BUT NOT LIMITED TO, THOSE ACTUALLY OR ALLEGEDLY CAUSED BY THE FAULT OR STRICT LIABILITY OF COMPANY GROUP, THE UNSEAWORTHINESS OR UNAIRWORTHINESS OF**

**ANY VESSEL, CRAFT OR PLATFORM, OR THE SOLE, JOINT OR CONCURRENT NEGLIGENCE OF ONE OR MORE MEMBERS OF COMPANY GROUP).**

(iii) COMPANY AGREES TO AND SHALL, RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS CONTRACTOR GROUP FROM AND AGAINST ANY AND ALL CLAIMS ON ACCOUNT OF BODILY INJURY OR DEATH, THAT MAY BE MADE OR ASSERTED BY COMPANY'S EMPLOYEES AND/OR AGENTS, ARISING OUT OF, RESULTING FROM, OR IN ANY WAY INCIDENTAL TO, DIRECTLY OR INDIRECTLY, THIS AGREEMENT **(INCLUDING, BUT NOT LIMITED TO, THOSE ACTUALLY OR ALLEGEDLY CAUSED BY THE FAULT OR STRICT LIABILITY OF CONTRACTOR GROUP, THE UNSEAWORTHINESS OR UNAIRWORTHINESS OF ANY VESSEL, CRAFT OR PLATFORM, OR THE SOLE, JOINT OR CONCURRENT NEGLIGENCE OF ONE OR MORE MEMBERS OF CONTRACTOR GROUP).**

(c) NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, AND WITHOUT IN ANY WAY LIMITING THE SCOPE AND EXTENT OF ANY INDEMNITIES PROVIDED FOR IN ANY OTHER PROVISION OF THIS AGREEMENT, CONTRACTOR AGREES TO AND SHALL, RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS COMPANY GROUP FROM AND AGAINST ANY AND ALL CLAIMS ON ACCOUNT OF PROPERTY DAMAGE (WHETHER REAL OR PERSONAL) THAT MAY BE MADE OR ASSERTED BY ANY PERSON OR ENTITY IN CONNECTION WITH ANY POLLUTION OR CONTAMINATION (INCLUDING CLEANUP AND/OR THE CONTROL AND REMOVAL OF SAME) WHICH ARISES OUT OF CONTRACTOR GROUP'S OPERATIONS HEREUNDER, OR ORIGINATES FROM ANY PROPERTY OWNED, LEASED, HIRED OR PROVIDED BY CONTRACTOR GROUP **(INCLUDING, BUT NOT LIMITED TO, THOSE ACTUALLY OR ALLEGEDLY CAUSED BY THE FAULT OR STRICT LIABILITY OF COMPANY GROUP, THE UNSEAWORTHINESS OR UNAIRWORTHINESS OF ANY VESSEL, CRAFT OR PLATFORM, OR THE SOLE, JOINT OR CONCURRENT NEGLIGENCE OF ONE OR MORE MEMBERS OF COMPANY GROUP).**

(d) NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, AND WITHOUT IN ANY WAY LIMITING THE SCOPE AND EXTENT OF ANY INDEMNITIES PROVIDED FOR IN ANY OTHER PROVISION OF THIS AGREEMENT, CONTRACTOR AGREES TO RELEASE, DEFEND, INDEMNIFY, AND HOLD HARMLESS COMPANY GROUP, AND ITS AND THEIR CO-LESSEES, WORKING INTEREST PARTNERS, AND JOINT VENTURERS, FROM AND AGAINST ANY AND ALL CLAIMS ON ACCOUNT OF PROPERTY DAMAGE AND/OR BODILY INJURY OR DEATH (INCLUDING BUT NOT LIMITED TO BODILY INJURY OR DEATH IN CONNECTION WITH ANY POLLUTION OR CONTAMINATION), THAT MAY BE MADE OR ASSERTED BY ANY THIRD PARTY THAT DIRECTLY OR INDIRECTLY ARISES FROM WORK UNDER THIS AGREEMENT TO THE EXTENT OF CONTRACTOR GROUP'S ALLEGED OR ACTUAL PROPORTIONATE NEGLIGENCE OR FAULT. FOR THE PURPOSES OF PARAGRAPH 13(d), "THIRD PARTY" MEANS ANY PERSON OR ENTITY OTHER THAN A MEMBER OF CONTRACTOR GROUP OR COMPANY GROUP.

(e) For purposes of this Article 13, the term "Indemnifying Party" shall mean the Party having an obligation to indemnify a person or persons pursuant to this Agreement, and the term "Indemnified Party" shall mean a person or persons having the right to be indemnified by a Party pursuant to this Agreement. To make a claim for indemnification under this Agreement, the Party asserting the right to be indemnified shall notify the other Party in writing of its claim, such notice to include the details of the underlying claim, and the specific basis under this Agreement for indemnification of the underlying claim (the "Indemnification Claim Notice"). The receiving Party shall respond in writing to the Indemnification Claim Notice no later than twenty (20) days after receipt of same.

If the receiving Party agrees in writing to indemnify the other Party for the claim specified in the Indemnified Claim Notice (the "Indemnified Claim"), the Indemnifying Party shall have the right and obligation to defend diligently the Indemnified Claim at its sole cost and expense. The Indemnifying Party shall have full control of such defense and proceedings, including any compromise or settlement thereof. If requested by the Indemnifying Party, the Indemnified Party agrees to cooperate with any actions reasonably necessary to contest any aspect of the Indemnified Claim that the Indemnifying Party elects to contest

*(provided, however,* that the Indemnified Party shall not be required to bring any counterclaim or cross-complaint against any person). The Indemnified Party may, at its sole cost and expense, participate in, but not control, any defense or settlement of any Indemnified Claim. An Indemnifying Party shall not, without the written consent of the Indemnified Party, which consent shall not be unreasonably withheld, settle any Indemnified Claim, or consent to the entry of any judgment with respect thereto that (i) does not result in a final resolution of the Indemnified Party's liability with respect to the Indemnified Claim (including, in the case of a settlement, an unconditional written release of the Indemnified Party), or (ii) imposes on the Indemnified Party any material non-financial obligation, or any financial obligation outside the scope of the Indemnifying Party's indemnification obligations under this Agreement.

If the Indemnifying Party fails to accept its indemnification obligation in writing, or fails to diligently defend or settle the Indemnified Claim, then the Indemnified Party shall have the right to defend against the Indemnified Claim (at the sole cost and expense of the Indemnifying Party, if the Indemnified Party is entitled to indemnification hereunder) with counsel of the Indemnified Party's choosing. If the Indemnified Party settles any Indemnified Claim over the objection of the Indemnifying Party after the Indemnifying Party has timely accepted the Indemnified Claim, the Indemnified Party shall be deemed to have waived any right to indemnity therefor.[3]

13. Exhibit "A," to the Pioneer/TOS MSA includes the MSA's insurance requirements, including the requirement that TOS, as "Contractor," identify "Company Group" as an additional insured on TOS' insurance policies, including commercial general liability insurance and excess liability insurance.[4]

---

[3] *See* Exhibit "B," attached hereto.
[4] *See* Exhibit "B," attached hereto.

*Pioneer/CalTex MSA*

14. Various Pioneer entities entered an Amended and Restated Master Service/Sales Agreement with CalTex effective August 24, 2018 (the "Pioneer/CalTex MSA").[5] The Pioneer/CalTex MSA identifies the Pioneer entities as "Company" and CalTex as "Contractor." Paragraphs 12 and 13 of the Pioneer/CalTex MSA include the identical terms and conditions as Paragraphs 12 and 13 of the Pioneer/TOS MSA.

15. Exhibit "A," to the Pioneer/CalTex MSA includes the MSA's insurance requirements.[6]

*Imperium Policy*

16. Imperium issued its commercial general liability policy number OGS-IIC-GL-0000220-00 to its named insured, TOS, for the policy term September 30, 2021 through September 30, 2022 (the "Imperium Policy").[7] The Imperium Policy includes an additional insured endorsement which provides, in relevant part:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Schedule**

| Name of Additional Insured Person(s) or Organization(s) | Location(s) of Covered Operations |
|---|---|

---

[5] *See* Exhibit "C," attached hereto and incorporated herein by reference, that being a true and correct and complete copy of the Pioneer/CalTex MSA.
[6] *See* Exhibit "C," attached hereto.
[7] *See* Exhibit "D," attached hereto and incorporated by reference, that being a true and correct and complete copy of the Imperium Policy.

| Any person or organization with whom you have agreed, through written contract, agreement or permit, executed prior to the loss, to provide additional insured coverage | Any location where you have agreed, through written contract, agreement or permit, executed prior to the loss, to provide additional insured coverage. |
|---|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

A. Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," "property damage," or "personal and advertising injury" caused, in whole or in part, by:
1. Your acts or omissions; or
2. The acts or omissions of those acting on your behalf;
in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.[8]
. . . .

*Factual Allegations*

17. The Underlying Lawsuit was filed on or about January 23, 2024.

18. CalTex tendered the Underlying Lawsuit to TOS and/or Imperium on or about February 5, 2025.

19. Having no response from TOS and/or Imperium to CalTex's February 5, 2025 tender, New York Marine, individually and as subrogated to the rights of its named insured, CalTex, re-urged its tender to TOS and/or Imperium on April 30, 2025.

20. Imperium denied CalTex's and New York Marine's tender on May 6, 2025.

21. TOS has failed to respond to CalTex and/or New York Marine's tenders.

### VI.    BREACH OF CONTRACT BY TOS

22. New York Marine incorporates and realleges the preceding paragraphs 1-21 as though fully set out herein.

---

[8] *See* Exhibit "D," pdf image 61 of 106, the "Blanket Additional Insured Endorsement."

23. As another, separate and distinct contractor for Pioneer, CalTex qualifies as "Company Group" under Section 13 of the Pioneer/TOS MSA.

24. Based upon the express terms of the Pioneer/TOS MSA, TOS owes contractual indemnity, including defense and indemnity of the Underlying Lawsuit, to CalTex pursuant to Section 13 of the Pioneer/TOS MSA because CalTex qualifies as "Company Group."

25. TOS has breached the Pioneer/TOS MSA and its contractual duties and obligations to "Company Group," including CalTex, by failing and refusing to assume the defense and indemnification of CalTex in the Underlying Lawsuit.

26. TOS' breach of contract was a proximate and producing cause of actual damage to New York Marine. New York Marine has sustained damage and injury to the extent it has expended fees and expenses associated with the defense of CalTex in the Underlying Lawsuit of which New York Marine maintains a subrogated interest. New York Marine has also sustained damage and injury to the extent it has expended claims adjustment fees and expenses. Also, New York Marine has been damaged to the extent it has been forced and compelled to bring this instant suit and incurred additional attorneys' fees and expenses in pursuing this instant action.

27. The Pioneer/TOS MSA also requires TOS to "name each member of Company Group [CalTex] as an 'additional insured' so that said insurance be made to extend to and protect Company Group [including CalTex] to the same extent Contractor is covered relative to transactions governed by this Agreement." (*See* Exhibit "B," Section 12.) Exhibit "A" to the Pioneer/TOS MSA reiterates the requirement for TOS to identify "Company Group" as an additional insured. (*See* Exhibit "B," the Exhibit "A" attached thereto.)

28. To the extent CalTex may possibly fail to qualify as an additional insured under the Imperium Policy, if at all, TOS has breached the Pioneer/TOS MSA and its contractual duties and

obligations to "Company Group," including CalTex, by failing to procure the contractually-required additional insured coverage benefitting "Company Group," including CalTex, for the Underlying Lawsuit.

29. TOS' breach of contract was a proximate and producing cause of actual damage to New York Marine. New York Marine has sustained damage and injury to the extent it has expended fees and expenses associated with the defense of CalTex in the Underlying Lawsuit of which New York Marine maintains a subrogated interest. New York Marine has also sustained damage and injury to the extent it has expended claims adjustment fees and expenses. Also, New York Marine has been damaged to the extent it has been forced and compelled to bring this instant suit and incurred additional attorneys' fees and expenses in pursuing this instant action.

### VII. BREACH OF CONTRACT BY IMPERIUM

30. New York Marine incorporates and realleges the preceding paragraphs 1-29 as though fully set out herein.

31. As another, separate and distinct contractor for Pioneer, CalTex qualifies as "Company Group" under Section 13 of the Pioneer/TOS MSA.

32. Pursuant to Section 12 and Exhibit "A," of the Pioneer/TOS MSA, TOS had a contractual obligation to identify "Company Group" as additional insured under TOS' commercial general liability insurance and excess liability insurance.

33. The Imperium Policy includes the Blanket Additional Insured Endorsement.

34. CalTex qualifies as an additional insured under the Imperium Policy's Blanket Additional Insured Endorsement for those claims asserted against CalTex in the Underlying Lawsuit.

35. The Imperium Policy includes no exclusions applicable to the pleadings asserted in the Underlying Lawsuit and no exclusions applicable to the facts of the Underlying Lawsuit.

36. CalTex properly and timely submitted a claim to Imperium and tendered the Underlying Lawsuit to Imperium in an attempt to secure benefits and rights owed to it under the Imperium Policy, including its right to provision of defense by Imperium in the Underlying Lawsuit.

37. Imperium, when presented with CalTex's request for a defense, wrongfully denied CalTex's claim and failed to timely provide a defense to CalTex in the Underlying Lawsuit.

38. Imperium failed to perform its contractual duty to provide CalTex a defense in the Underlying Lawsuit. Specifically, Imperium refused to retain and pay a defense attorney to represent and defend CalTex in the Underlying Lawsuit, despite due demand for defense and all conditions precedent being carried out and accomplished by CalTex and/or New York Marine. Imperium's conduct constitutes a breach of the Imperium Policy.

39. Imperium's breach of contract was a proximate and producing cause of actual damage to New York Marine. New York Marine has sustained damage and injury to the extent it has expended fees and expenses associated with the defense of CalTex in the Underlying Lawsuit of which New York Marine maintains a subrogated interest. New York Marine has also sustained damage and injury to the extent it has expended claims adjustment fees and expenses. Also, New York Marine has been damaged to the extent it has been forced and compelled to bring this instant suit and incurred additional attorneys' fees and expenses in pursuing this instant action.

### VIII. ATTORNEYS' FEES AND EXPENSES

40. New York Marine incorporates and realleges the preceding paragraphs 1-39 as though fully set out herein.

41.     New York Marine, as subrogated to the rights of CalTex, seeks recovery of its attorneys' fees and expenses incurred in this instant action based upon the breach of contract by TOS and/or Imperium pursuant to Tex. Civ. Prac. & Rem. Code Ch. 38.

42.     New York Marine reserves the right to amend or supplement this complaint as discovery and facts of the Underlying Lawsuit and/or this instant action may support.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff New York Marine and General Insurance Company prays that judgment be entered against Defendants Thomas Oilfield Services, LLC and/or Imperium Insurance Company on all claims and for New York Marine and General Insurance Company's actual, consequential, and incidental damages, attorneys' fees, litigations expenses, costs of court, pre- and post-judgment interest, and reasonable and necessary attorneys' fees and expenses/costs incurred in prosecuting this action, including any and all appeals to any courts of appeal; and that New York Marine and General Insurance Company be granted such other and further relief, at law and in equity, both general and special, to which it may show itself justly entitled.

Dated this 20th day of May, 2025.

                                        Respectfully submitted,

                                        */s/ Stephen A. Melendi*
                                        Stephen A. Melendi
                                        Attorney-in-Charge
                                        SBN 24041468
                                        Southern District of Texas No. 38607
                                        stephenm@tbmmlaw.com
                                        Suzanne A. Schlicher
                                        SBN 02601800
                                        Southern District of Texas No. 15040
                                        suzannes@tbmmlaw.com
                                        TOLLEFSON BRADLEY MITCHELL & MELENDI, LLP
                                        2811 McKinney Ave., Suite 250 West

Dallas, Texas 75204
Telephone – 214.665.0100
Facsimile – 214.665.0199

**ATTORNEYS FOR PLAINTIFF,
NEW YORK MARINE AND GENERAL
INSURANCE COMPANY**